1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7
## EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| ROSA Y. ALVAREZ, | ) | 1:05cv01032 JMD |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

9
10
11
12
13
14
15
16
17

18
## **BACKGROUND**

19          Plaintiff Rosa Y. Alvarez ("Plaintiff") seeks judicial review of a final decision of the

20    Commissioner of Social Security ("Commissioner") denying her application for supplemental

21    security income ("SSI") and disability insurance benefits pursuant to Title XVI and Title II of the

22    Social Security Act.  The matter is currently before the Court on the parties' briefs, which were

23    submitted, without oral argument, to the Honorable John M. Dixon, Jr., United States Magistrate

24    Judge.[1]

25
26
27

28

[1]The parties consented to the jurisdiction of the United States Magistrate Judge.  On December 23, 2005, the Honorable Anthony W. Ishii assigned the case to Magistrate Judge Sandra M. Snyder.  On July 16, 2007, the Honorable David F. Levi reassigned the case to the undersigned for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

On September 19, 2003, Plaintiff filed an application for SSI and disability insurance benefits. AR 67-69, 222-225. She alleged disability since January 3, 2003, due to lower back pain and neck stiffness. AR 93, 222. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 40-43, 47-51, 52. On January 14, 2005, ALJ James S. Carletti held a hearing. AR 228-250. ALJ Carletti denied benefits on March 25, 2005. AR 13-23. On June 30, 2005, the Appeals Council denied Plaintiff's request for review. AR 4-6.

Hearing Testimony

The hearing convened in Fresno, California. AR 15, 228. Plaintiff appeared with her attorney, Robert Christenson. AR 230. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 230, 245-249.

At the time of the hearing, Plaintiff was 46 years old with an eighth grade education. AR 231. She was a "CNA." AR 231. She also had been a housekeeper at laundry, a packer grader, a machine operator, a yearbook negative burner (operating a small machine) and a fast food worker. AR 231-232. As a fast food worker, she was "like a hostess" and did some cooking. AR 232.

Plaintiff testified that a couple of weeks before she became disabled in January 2003, she was working at McDonald's. AR 232. She kept going inside the refrigerator and lifted a box of patties. AR 232-233. When she put the box down, her back started hurting, but she did not "really put attention to it." AR 233. She could not blame her disability on that. AR 233. She stopped working there, but a week later she got up one morning with "a bad lower back pain." AR 233. It has never gone away. AR 233. She went to the doctor and got pills. AR 233. Now she gets shots. AR 233. It is a very frustrating pain. AR 233. They sent her to get a bone test. AR 233. To her, it is very painful. AR 233. If she did not have the low back problems, she would be able to work. AR 233.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    Plaintiff testified that Dr. Wlasichuk[3] is her treating doctor.  AR 233.  She takes her

2    medications the way the doctor tells her.  AR 233-234.  They relieve her pain.  AR 234.  If she

3    keeps on "doing stuff [her] pain comes back quick."  AR 234.  She needs to rest and then take

4    her time.  AR 234.  She takes her time in her housework.  AR 234.  There are certain things she

5    cannot do.  AR 234.  She sometimes has a little bit of an upset stomach and gets light-headed

6    from her medications.  AR 234.

7    Plaintiff testified that she lives with her three boys.  AR 234.   They are 23, 21 and 20.

8    AR 234.  She does the cooking and the grocery shopping.  AR 234-235.  The boys help her with

9    cleaning.  AR 235.  They do "stuff" that she cannot do.  AR 235.  She does some light cleaning

10   or straightening up.  AR 235.

11   Plaintiff testified that, besides Dr. Wlasichuk, she sees Dr. Torres on a regular basis.  AR

12   235.  He is her family doctor.  AR 235.  She sees him for her asthma, back and everything else.

13   AR 235.  Dr. Wlasichuk is a therapy or pain specialist.  AR 235.

14   In response to questions from her legal counsel, Plaintiff testified she has back pain and

15   asthma.  AR 235-236.  She uses a nebulizer three to four times a day, depending on how her

16   asthma reacts.  AR 236.  She uses it at 6:00 a.m., between 11:00 or 12:00 and then at 4:00.  AR

17   236.  If she has to, she will use it before she goes to bed.  AR 236.

18   Plaintiff described the pain in her lower back.  AR 236.  When she moves a "different

19   way, it like pops."  AR 236.  It is like putting a needle into her buttocks.  AR 236-237.

20   Sometimes it is so strong it seems like she has ice "right here all over."  AR 237.  In other words,

21   it is like "having and giving birth."  AR 237.  It is painful, very painful.  AR 237.  She "could

22   take pain, but this pain is something."  AR 237.

23   Plaintiff testified that she is taking Vicodin--the750's.  AR 237.  Dr. Wlasichuk gives her

24   trigger point injections on each side of her lower back "like every other month."  AR 237.  The

25   injections help for awhile, but do not take her pain away.  AR 237.  It "like numbs it."  AR 237.

26   If she overdoes it, her pain comes back "real quick."  AR 237.

27

28   _____

[3]The hearing transcript refers to Dr. Wlasichuk as "Dr. Wasnochuck."  AR 230.  At the hearing, the ALJ indicated that he would refer to Dr. Wlasichuk as "Dr. W."  AR 230.  For ease of understanding, the Court will refer to this provider as Dr. Wlasichuk.

1      Plaintiff testified that she has difficulty lifting and carrying things.  AR 237.  She can lift

2  or carry about 10 pounds.  AR 237-238.  She did not know if she would be able to lift ten pounds

3  for two to three hours of an eight-hour day.  AR 238.  She did not think so because lately her

4  arms have been bothering her.  AR 238.  Even if she just lays on her arm, it is like somebody

5  pulling her arm.  AR 238.  She did not know how to explain it.  AR 238.

6      Plaintiff testified that she cannot sit for a long time.  AR 238.  She can sit for 20 minutes.

7  AR 238.  She has to stand up and do her stretches or lie on the floor on her back.  AR 238.

8  Standing is the same thing.  AR 238.  She maybe could walk for about 20 or 25 minutes and then

9  she would have to lie on her back.  AR 238.  Standing is about the same.  AR 238.  She has times

10  in the day where she needs to lie down.  AR 239.  It happens "around four times a day" in an

11  eight-hour time period.  AR 239.  She would have to lie down for about 20 or 30 minutes.  AR

12  239.  The reason she lies down is because of her lower back pain.  AR 239.  It helps relieve the

13  pain.  AR 239.  When she lies down on her back, she relaxes it and does some stretches that help

14  relieve her pain "a little bit."  AR 239.  The "therapy people" at Dr. Wlasichuk instructed her on

15  doing the stretches to try to stretch out or to help.  AR 239-240.  She testified that she could sit

16  two to three hours in an eight-hour time period and could stand about the same.  AR 240.

17      Plaintiff also testified that she has good days and bad days.  AR 240.  A bad day is when

18  she is depressed.  AR 240.  She gets depressed because she cannot do a lot of things.  AR 240.

19  She used to do a lot of things around her house.  AR 240.  She does not "know to depend on

20  nobody."  AR 240.  On bad days, she has bad pain and depression.  AR 241.  When the back pain

21  is "real bad," she has more depression.  AR 241.  On a bad day, she would be asleep or lying

22  down or crying.  AR 241.  In a week, she will have two to three bad days.  AR 241-242.

23      Plaintiff testified that Dr. Wlasichuk told her that he was going to have another test done.

24  AR 242.  Dr. Torres wanted to send her to David Cooper, a specialist at Cypress.  AR 242.  She

25  went to see how much he charged to see if she could make payments.  AR 242.  She wants to be

26  the first one to know what is wrong with her, because the "pain is not just any little thing."  AR

27  242.  She went, but she could not afford it.  AR 243.

28

Plaintiff testified that her life is not the same since she is in pain.  AR 243.  She used to be a happy person.  AR 243.  She used to like to listen to music, to dance.  AR 243.  She "can't do nothing."  AR 243.  She used to drink.  AR 243.  She used to have good times with her friends.  AR 243.  She does not do that any more because of the depression.  AR 243.  Sometimes she gets some anxiety.  AR 243.  Her life is not the same.  AR 243.

Plaintiff testified that she saw Dr. Perez at the Visalia Medical Clinic.[4] AR 244.  Dr. Perez left and Dr. Torres took over.  AR 244.  Dr. Perez never recommended or referred Plaintiff to a psychiatrist or psychologist.  AR 244.  Dr. Perez moved to Georgia.  AR 244.  Dr. Torres gave Plaintiff Paxil because her Zoloft was not really working.  AR 244.  Dr. Torres started her on a lower dosage of Paxil.  AR 244.  She is no longer taking Zoloft.  AR 245.  She started on the Paxil about a month before the hearing.  AR 245.  She has seen "a little different," but did not know if the Paxil was causing her to be real shaky.  AR 245.  She shakes "a lot."  AR 245.  She never did that before the Paxil.  AR 245.  It helps "a little bit" on her mood.  AR 245.  She thinks it is better than Zoloft.  AR 245.

VE Cheryl Chandler also testified.  AR 245.  The VE had an opportunity to review the evidence of record and reported the exertional requirements and skill levels of Plaintiff's prior work activities.  AR 245-246.  The machine operator, with the yearbooks and handling of negatives, was unskilled and light.  AR 246.  The fast food worker doing various tasks was unskilled and medium.  AR 246.  The VE testified that the DOT has it at light, but it is a medium job.  AR 246.  Caregiver in home services was medium and unskilled.  AR 246.  CNA work was medium and SVP3, semi-skilled.  AR 246.  Housekeeping, laundry work was unskilled and medium.  AR 246.  Work for a sugar company putting kits together was unskilled and light.  AR 246.  A machine operator position in a bottling company appeared to be unskilled and light.  AR 246.  The only job with any skills was the CNA work.  AR 246.  The semi-skills would not transfer to light or sedentary positions.  AR 246.

---

[4]The transcript identifies the medical facility as "Biselia Medical Clinic."  AR 244.  The medical records identify this facility as "Visalia Medical Clinic, Inc."  AR 158.  For ease of understanding, the Court will refer to the facility as "Visalia Medical Clinic."

For the first hypothetical, Plaintiff's legal counsel asked the VE to assume a person of Plaintiff's age, education and work experience. AR 247. This person occasionally suffers from pain, fatigue or symptoms that would interfere with her attention and concentration. AR 247. This person could sit and stand about 30 minutes at a time, could sit about two hours in an eight-hour day and stand or walk about two hours in an eight-hour day. AR 237. This person would have to alternate sit, stand and walk. AR 247. This person would require unscheduled breaks every hour for an average of 10 minutes. AR 247. This person occasionally could lift 10 pounds and occasionally could twist, stoop, bend, crouch and climb. AR 247. The VE testified that this person would not be able to perform Plaintiff's past relevant work or any other work in the national economy. AR 247-248.

For the second hypothetical, Plaintiff's legal counsel asked the VE to assume a person of Plaintiff's age, education and work experience. AR 248. This person likely would be absent from work an average of about three days per month. AR 248. The VE testified that this person would not be able to perform Plaintiff's past relevant work or other work in the national economy. AR 248. If this person would have to take lie down breaks an average of four times a day for about 20 to 30 minutes at a time, this person would not be able to perform Plaintiff's past relevant work and would not be able to perform other work in the national economy. AR 248.

The ALJ asked the VE to assume a person of Plaintiff's vocational profile. AR 248. This person could lift 20 pounds occasionally, 10 pounds frequently, could stand about six hours in an eight-hour workday and could sit about six hours in an eight-hour workday. AR 248. This person needed to alternate sitting and standing approximately every two hours and needed to avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. AR 248-249. The VE testified that the Plaintiff's prior work activities would not be available, but there would be a limited number of jobs in the open labor market. AR 249. There are approximately 1,000 positions available in California through hand packaging, which allows for a sit/stand type of work station. AR 249. There are approximately 2,600 jobs in California performing assembly and production work. AR 249. There also are about 5,000 jobs in California doing unskilled

1  cashiering jobs with a sit/stand option.  AR 249.  Those numbers could be multiplied times 10

2  for national data.  AR 249.

3       Medical Evidence

4       Views of Plaintiff's cervical and lumbar spine taken on April 3, 2002, showed no

5  abnormality.  AR 174.

6       On December 19, 2002, Plaintiff saw Raul Perez, M.D., of the Visalia Medical Clinic for

7  complaints of pain in her right hip.  AR 173.  Plaintiff again saw Dr. Perez on January 3, 2003,

8  for her hip pain.  AR 172.  She reported that the pain sometimes went into her right thigh.  AR

9  172.  X-rays were unremarkable.  AR 172.  Plaintiff also complained of pain on the right side of

10  her neck into her right scapula area and into her right arm.  AR 172.  Dr. Perez assessed Plaintiff

11  with right hip pain, "very likely due to sciatica," which had not improved with conservative

12  treatment.  AR 172.  She was prescribed Orudis for pain and Flexeril for muscle spasms.  AR

13  172.  Dr. Perez planned to refer her to orthopedics for further evaluation.  AR 172.  Dr. Perez

14  also assessed Plaintiff with muscle strain of the neck and the right scapula area.  AR 172.

15  Although she was unemployed at the time, Dr. Perez felt that, because of the discomfort in her

16  neck, Plaintiff could not return to work.  AR 172.  Dr. Perez opined, "[w]e will very likely need

17  to file for temporary disability."  AR 172.

18       On January 8, 2003, Plaintiff underwent an orthopaedic consultation with Tony

19  Caffarelli, PA-C ("PA Caffarelli"), of the Visalia Medical Clinic.  AR 170-171.  Plaintiff

20  complained of low back pain with leg pain.  AR 170.  On physical examination, Plaintiff had

21  some difficulty with transition from a siting to a standing position.  AR 170.  Her motor strength

22  of the lower extremities was 5/5 with some discomfort on the left.  AR 170.  Coughing

23  aggravated her symptoms in the lower back and left leg.  AR 170.  She had dysesthesia along the

24  lateral thigh and anterior thigh of her left leg consistent with L3-4 distribution.  AR 170.  X-rays

25  of the lumbosacral spine showed some sclerotic changes of the facets of L4-5, otherwise the disk

26  spaces were preserved and there was no evidence of bony abnormalities.  AR 170.

27       PA Caffarelli opined that Plaintiff had minimal degenerative arthritis of the lumbosacral

28  spine.  AR 170.  PA Caffarelli also indicated that the question of a small herniated nucleus

1  pulposus, left paracentral L3-4, was confirmed by physical findings.  AR 170.  No MRI was

2  available.  AR 170.  PA Caffarelli recommended that Plaintiff avoid sitting, lifting and bending.

3  AR 171.  Her dosage of Celebrex was increased and her Vicodin refilled.  AR 171.  She was

4  "advised ice compresses and protective measures of her back."  AR 171.

5          X-rays of Plaintiff's L spine taken on January 8, 2003, showed no significant

6  abnormalities.  AR 169.

7          On January 29, 2003, Plaintiff sought treatment from PA Caffarelli for reevaluation of her

8  degenerative disc disease of the lumbosacral spine and questionable radicular symptoms to the

9  left L3-4.  AR 167.  Plaintiff reported that her symptoms were continuing.  AR 167.  X-rays of

10  Plaintiff's cervical spine were normal.  AR 167, 168.  PA Caffarelli opined that Plaintiff had

11  mechanical cervical strain and degenerative disc disease, lumbrosacral spine, with mechanical

12  low back pain and slight radiculopathy.  AR 167.  PA Caffarelli planned to seek authorization for

13  Plaintiff to undergo physical therapy.  AR 167.  She was advised to continue her Celebrex and

14  Vicodin medications.  AR 167.

15          On February 28, 2003, Plaintiff saw PA Caffarelli for complaints of multiple areas of

16  pain in her neck and back.  AR 166.  Plaintiff reported that her whole body was sore.  AR 166.

17  On physical exam, Plaintiff's cervical, thoracic and lumbar spine reproduced discomfort with

18  palpation.  AR 166.  She was able to flex approximately 30 degrees.  AR 166.  PA Caffarelli

19  opined that Plaintiff had multiple cervical, thoracic and lumbar discomfort.  AR 166.  PA

20  Caffarelli planned to order lab work and a total body bone scan.  AR 166.  Plaintiff was advised

21  to decrease her Celebrex and her Vicodin.  AR 166.  PA Caffarelli recommended that Plaintiff

22  not work for two weeks.  However, Plaintiff was "observed leaving the clinic and she walked

23  extremely well in the parking lot to her vehicle."  AR 166.  PA Caffarelli indicated that if the

24  bone scan and lab results were normal, Plaintiff's medication would not be refilled and she

25  would be returned to work.  AR 166.

26          On March 25, 2003, Plaintiff saw PA Caffarelli for "disability shortage."  AR 165.  She

27  reported that her disability was expiring prior to her bone scan and her symptoms continued to

28  bother her.  AR 165.  She also reported that her Darvocet and Orudis were not helping.  AR 165.

PA Caffarelli opined that Plaintiff's exam continued to be "very suspicious of symptomatic complaints versus objective complaints." AR 165.  PA Caffarelli further indicated that putting central pressure on her head and pushing down on her cervical spine reproduced her back pain, which was "very suspicious."  AR 165.  PA Caffarelli gave her an extension until March 31, after her bone scan.  AR 165.  Her Orudis was discontinued and she was given "Ultracef" for pain. AR 165.  PA Caffarelli noted that upon leaving the clinic "Catherine observes [Plaintiff] to be walking quite smoothly as before although in the office she is walking very guardedly and slowly," which continued to reinforce PA Caffarelli's suspicion that Plaintiff's bone scan would be "totally normal."  AR 165.

On March 31, 2003, Plaintiff saw PA Caffarelli for follow up on the total body bone scan. AR 164.  The bone scan "was totally normal with no evidence of any increased uptake along the cervical, thoracic or lumbar spine."  AR 164.  PA Caffarelli recommended that Plaintiff return back to work.  AR 164.  She reported that she was still in pain, so PA Caffarelli advised her to follow-up with her primary care physician.  AR 164.

On April 2, 2003, Plaintiff saw Dr. Perez for her back pain.  AR 162.  Dr. Perez noted that Plaintiff had been seeing PA Caffarelli for her back.  AR 162.  Dr. Perez also indicated that X-rays showed mild "DJD" and a bone scan was unremarkable.  AR 162.  Plaintiff complained of pain in her lower back, which sometimes radiated to her legs.  AR 162.  She had been taking anti-inflammatories and pain medication.  AR 162.  Plaintiff felt she could not go back to work. AR 162.  On examination, Plaintiff had fair range of motion of her back with positive tenderness along her lumbosacral and paravertebral lumbosacral area.  AR 162.  Dr. Perez assessed her with low back pain and continued her disability.  AR 162.  Dr. Perez planned to order an MRI to rule out radiculopathy.  AR 162.  Dr. Perez felt that Plaintiff would have mechanical low back pain of a non-radicular type, which might need strenuous, aggressive physical therapy.  AR 162.

On April 11, 2003, Plaintiff underwent an MRI of her spine.  AR 161.  The MRI revealed facet arthrosis with hypertrophy of ligamenta flava in the lower lumbar spine without evidence of a herniated nucleus pulposus, spinal stenosis, etc.  AR 161.

On April 30, 2003, Plaintiff again saw Dr. Perez for complaints of pain in her lower back when sitting, standing or walking.  AR 160.  She reported that the Vicodin helped.  AR 160.  X-rays and a recent MRI did not show any evidence of spinal stenosis.  AR 160, 161.  On physical examination, Plaintiff had range of motion of her back to approximately 120 degrees, with positive LS spine tenderness and minimal paravertebral lumbosacral tenderness.  AR 160.  Dr. Perez assessed Plaintiff with mechanical low back pain and chronic muscle strain.  AR 160.  She had no evidence of any radiculopathy on MRI or on exam.  AR 160.  Dr. Perez opined that she needed aggressive physical therapy.  AR 160.

On May 13, 2003, Plaintiff saw Michael Wlasichuk, M.D., of Physical Medicine & Rehabilitation Associates for a therapy evaluation of her lumbar spine.  AR 148-150.  Plaintiff reported that she had been in a motor vehicle accident on April 17, 2002, and underwent treatment.  AR 148.  In January 2003, she had a recurrence of pain symptoms in her lower back.  AR 148.  She had constant pain in the mid and lower lumbar region, traveling down her left leg to about the knee, along with localized burning in her lower back.  AR 148.  She was able to sit for 20 minutes and stand and/or walk for short periods of time.  AR 148.  She shopped and drove an automobile.  AR 148.  On examination, Plaintiff walked normally.  AR 150.  Palpation of her lumbar spine revealed no evidence of muscle spasm.  She had pain discomfort at the mid and lower lumbar region, paraspinal muscles and the sacrum.  AR 150.  Dr. Wlasichuk assessed Plaintiff with chronic lumbar muscular strain without any evidence of radiculopathy.  AR 150.  Her treatment plan included therapy three times per week for one month, Bextra for pain control, and injections into her lower back.  AR 150.  She received a trigger point injection.  AR 136.

On June 10, 2003, Plaintiff saw Dr. Perez for her back pain.  AR 159.  Plaintiff reported problems sitting for prolonged periods of time or standing.  AR 159.  On physical examination, range of motion in her back was approximately 100 degrees.  AR 159.  She had positive LS spine and positive paravertebral lumbosacral tenderness.  AR 159.  Dr. Perez assessed her with mechanical low back pain, non-radicular in etiology, with some improvement.  AR 159.  Dr. Perez advised her to continue physical therapy for 2 months and to continue her medications.  AR 159.

On June 10, 2003, Plaintiff saw Dr. Wlasichuk for her lower back.  AR 145-146.  She reported temporary relief from use of a Dexamethasone injection.  AR 145.  She also had relief with therapy consisting only of six treatments.  AR 145.  On examination, palpation of Plaintiff's lumbar spine resulted in discomfort primarily at the left lower lumbar region, including the upper buttock area.  Flexion of her trunk was 75 degrees and extension was 25 degrees.  AR 145.  Dr. Wlasichuk assessed Plaintiff with chronic mechanical low back pain.  AR 146.  Her treatment plan included continued therapy, injection into the left buttock area and samples of Bextra.  AR 146.  She received a trigger point injection.  AR 135.

On July 30, 2003, Plaintiff saw Dr. Perez for complaints of mechanical low back pain.  AR 158.  Plaintiff had been doing better, but continued to complain of non-radiating pain in her lower back.  AR 158.  On physical examination, range of motion in her back was approximately 120 degrees.  AR 158.  She had minimal "LS spine tenderness and paravertebral lumbosacral tenderness."  AR 158.  She had no pain on straight leg lift and no muscle atrophy.  AR 158.  Dr. Perez assessed Plaintiff with mechanical low back pain.  AR 158.  Dr. Perez also recommended that she continue seeing Dr. Wlasichuk and continue anti-inflammatory and Vicodin medications.  AR 158.  Dr. Perez noted that Plaintiff had received some improvement with steroid shots.  AR 158.

On August 11, 2003, Plaintiff reported continued low back pain, which was relieved with Bextra and Vicodin.  AR 144.  She was assessed with chronic mechanical lower back pain.  AR 144.

On August 22, 2003, Plaintiff reported no change in her low back.  AR 143.  She received a trigger point injection.  AR 135.

On September 22, 2003, Plaintiff reported lower back relief with long acting Cortisone injections, but her pain was continuing.  AR 142.  She was assessed with chronic mechanical back pain and prescribed medications and continued therapy.  AR 142.  She again received a trigger point injection.  AR 135.

On September 30, 2003, Plaintiff saw Dr. Perez for a re-check of her back.  AR 154-155.  Plaintiff had not received improvement from physical therapy and steroid facet joint injection.

AR 154.  She favored her back and had pain in her left knee.  AR 154.  A radiology examination

of her left knee was negative.  AR 157.  On examination, she was "tender@LS spine."  AR 155.

Dr. Perez assessed her with Lumbago and Depressive Disorder-NEC.  AR 155.  Dr. Perez

suggested that Plaintiff continue to see Dr. Wlasichuk and planned to refer her to a pain control

center.  AR 155.  Dr. Perez also started Plaintiff on Zoloft, noting that she had a lot of underlying

anxiety/depression.  AR 155.

On October 17, 2003, Plaintiff saw Dr. Wlasichuk for continued complaints of persistent

pain in her lower back going down the left leg to the knee and tingling.  AR 140.  Plaintiff

reported having relief with Vicodin, Celebrex and use of a TENS unit.  AR 140.  She had

previous relief with the use of Cortisone injections.  AR 140.  On examination, Plaintiff had pain

at the left upper buttock area, including the L5-S1 region.  She had trunk flexion of 35 degrees

and extension of 15 degrees.  AR 140.  Her tendon reflexes were normal.  AR 140.  Dr.

Wlasichuk assessed Plaintiff with chronic mechanical low back pain.  AR 140.  Her plan was to

have an EMG/nerve conduction study and to continue on her current medications.  AR 140.

On October 31, 2003, Plaintiff reported no change to her lower back.  AR 139.  She

received another trigger point injection.  AR 134.

On November 4, 2003, Sadda Reddy, M.D., completed a Physical Residual Functional

Capacity Assessment form.  AR 181-188.  Dr. Reddy opined that Plaintiff could lift and/or carry

50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-

hour workday and could sit about 6 hours in an 8-hour workday.  AR 182.  She periodically had

to alternate sitting and standing to relieve pain or discomfort.  AR 182.  Dr. Reddy noted that

Plaintiff would need to stretch briefly for a minute or two every 2 hours.  AR 182.  Plaintiff did

not have limitations on pushing and/or pulling, other than as shown for lift and/or carry.  AR 182.

She frequently could climb, balance, kneel and crawl.  AR 183.  She occasionally could stoop

and crouch.  AR 183.  She had no manipulative, visual or communicative limitations, but had to

avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  AR 184-185.

On November 17, 2003, Dr. Wlasichuk conducted electrodiagnostic studies of Plaintiff's

left lower extremity and lumbar spine.  AR 137-138.  Plaintiff had normal nerve conduction with

1   the exception of a slight decrease of amplitude of the left peroneal nerve.  AR 138.  Her

2   electromyographic examination was normal.  AR 138.

3       On December 2, 2003, Plaintiff saw Dr. Perez for her low back pain.  AR 153, 206-207.

4   Dr. Perez noted that Plaintiff had depression, but no disturbances of consciousness, emotion,

5   memory or thinking.  AR 206.  She had no hallucinations, mania or psychosis.  AR 206.  Plaintiff

6   had a cough and dyspnea.  AR 207.  On examination, her lungs showed decreased breath sounds

7   bilaterally with faint expiratory wheezes diffusely.  AR 207.  Range of motion of her back was

8   only to approximately 150 degrees.  AR 207.  She had positive lumbosacral spine and right and

9   left paravertebral lumbosacral tenderness.  AR 207.  Dr. Perez assessed Plaintiff with lumbago,

10  depressive disorder-NEC and asthma.  AR 207.  Dr. Perez indicated that Plaintiff had extensive

11  testing with not much improvement in her condition.  AR 207.  Dr. Perez believed that Plaintiff

12  suffered from chronic pain and that she had been very cooperative with treatment and tests.  AR

13  207.  Dr. Perez noted that Plaintiff had been turned down for permanent disability.[5]  AR 207.

14  Dr. Perez also noted that Plaintiff's asthma was not very well controlled.  AR 207.

15      On December 17, 2003, Plaintiff sought treatment for her low back.  AR 195.

16      On January 19, 2004, Dr. Wlasichuk wrote to Dr. Perez regarding Plaintiff.  AR 194.  Dr.

17  Wlasichuk reported seeing Plaintiff on January 19, 2004, during which Plaintiff complained of

18  localized lumbar pain.  AR 194.  Dr. Wlasichuk further reported that Plaintiff previously had

19  good results with Cortisone injections and use of a TENS unit.  AR 194.  On examination of the

20  lumbar spine, palpation was with pain discomfort at the lower lumbar region.  AR 194.  Dr.

21  Wlasichuk assessed Plaintiff with chronic lumbar strain/mechanical low back pain.  AR 194.  Dr.

22  Wlasichuk recommended epidural injections x3 with Dr. Hoyt, a Celebrex refill and another

23  TENS unit.  AR 194.

24      On January 26, 2004, Plaintiff saw Dr. Perez for chronic back pain.  AR 205.  Plaintiff

25  complained of a moderate amount of chronic back pain and increasing shortness of breath.  AR

26

27          [5]Due to a lined-out word and illegible interlineation, it is unclear from the record before the Court whether
    Dr. Perez felt that Plaintiff was or was not able to work as of December 2, 2003.  AR 207.  The Commissioner's
28  Opposition to Appellant's Opening Brief ("Opposition") states, "Dr. Perez opined that [Plaintiff] was not able to
    work due to chronic pain and depression."  Opposition at p. 5.

205.  On physical examination, Plaintiff's lungs showed decreased breath sounds bilaterally with faint expiratory wheezes.  AR 205.  The range of motion in her back was to approximately 120 degrees.  AR 205.  She had positive LS spine tenderness with paravertebral lumbosacral tenderness.  AR 205.  Dr. Perez assessed her with chronic back pain, permanent and stationary.  AR 205.  She also had asthma with "not much improvement."  AR 205.

On February 9, 2004, Dr. Perez completed a Short Form Evaluation of Mental Disorders form.  AR 151-152.  Dr. Perez diagnosed Plaintiff with chronic back pain.  AR 151.  On mental status exam, she had normal appearance, behavior, sensorium and cognitive functioning.  AR 151.  She was depressed due to chronic pain, with crying episodes and poor sleep.  AR 151.  Dr. Perez concluded that Plaintiff did not have any limitations of her work-related skills, except that she could not engage in any activity that involved prolonged standing, sitting or bending.  AR 152.

On February 19, 2004, Plaintiff sought treatment for her lower back.  AR 193.  She reported no change and continued localized pain.  AR 193.  She received a trigger point injection.  AR 132.

On March 5, 2004, E. Wong, M.D., completed a Psychiatric Review Technique form.  AR 177-178.  Dr. Wong opined that Plaintiff's impairment(s) was not severe.  AR 177.

On March 25, 2004, Plaintiff saw Dr. Perez for chronic low back pain and asthma.  AR 204.  On examination, Plaintiff's lungs showed decreased breath sounds bilaterally with faint expiratory wheezes.  AR 204.  The range of motion of her back was to approximately 120 degrees.  AR 204.  She had positive LS spine tenderness with paravertebral lumbosacral tenderness.  AR 204.  Dr. Perez assessed Plaintiff with permanent and stationary chronic low back pain and asthma with some improvement.  AR 204.  Dr. Perez opined that if Plaintiff wanted to pursue permanent disability she would need to hire a lawyer.  AR 204.  Dr. Perez felt that "due to chronic pain and depression that her pain has caused that she [was] unable to work at the present time."  AR 204.

On April 7, 2004, Plaintiff sought treatment for her low back.  AR 192.  Her treatment plan included Celebrex and epidurals.  AR 192.

On April 26, 2004, Plaintiff saw Wendy Reed-Perez, P.A.C., at Visalia Medical Clinic, for a productive cough, spasms, weakness and lightheadedness. AR 202. Ms. Reed-Perez noted that Plaintiff continued to smoke approximately two cigarettes per day. AR 202. On physical examination, Plaintiff had decreased breath sounds, with crackles throughout and expiratory wheezing. AR 202. Ms. Reed-Perez assessed Plaintiff to have COPD with exacerbation. AR 202. X-rays of Plaintiff's chest showed right lower lobe pneumonia. AR 203.

On April 29, 2004, Plaintiff saw Dr. Perez for a re-check. AR 201. On examination, Plaintiff's lungs showed decreased breath sounds bilaterally with faint expiratory wheezes and rhonchi. AR 201. Dr. Perez assessed her with COPD exacerbation secondary to pneumonia. AR 201.

On May 3, 2004, Plaintiff saw Dr. Perez for an asthma re-check. AR 200. Dr. Perez noted that Plaintiff was doing a lot better. AR 200. On examination, her lungs showed decreased breath sounds bilaterally with faint expiratory wheezes. AR 200. Dr. Perez assessed her with asthma exacerbation "due to right and lower lobe pneumonia improved." AR 200. Plaintiff was to continue her nebulizer treatment, add Advair and continue Singulair and Phenergan DM cough syrup. AR 200.

On May 11, 2004, Plaintiff saw Dr. Perez for asthma and pneumonia. AR 199. Plaintiff continued to complain of chronic back pain, with no pain radiating down to her legs. AR 199. On examination, Plaintiff had decreased breath sounds bilaterally with less expiratory wheezes. AR 199. She had positive tenderness along her LS spine and paravertebral lumbosacral tenderness. AR 199. She had fair range of motion of her back to approximately 120 degrees. AR 199. Dr. Perez indicated that Plaintiff's asthma had "some improvement" and that her chronic low back pain was permanent and stationary. AR 199.

On May 19, 2004, Plaintiff sought treatment for her low back. AR 191. She reported no change. AR 191.

On June 10, 2004, Plaintiff saw Dr. Perez for her asthma and chronic low back pain. AR 198. Plaintiff reported that her back was the same. AR 198. She complained of non-radiating lower back pain with more pain along her left lower back. AR 198. She also reported that her

1  asthma was better.  AR 196.  On physical examination, Plaintiff's lungs showed decreased breath

2  sounds bilaterally with faint expiratory wheezes diffusely.  AR 198.  Range of motion in her back

3  was to approximately 120 degrees.  AR 198.  She had positive tenderness along her LS spine and

4  left paravertebral lumbosacral area.  AR 198.  Dr. Perez indicated that Plaintiff's pneumonia was

5  cleared up and her asthma was stable and improved.  AR 198.  Chest X-rays showed no

6  significant abnormalities.  AR 197.  Dr. Perez assessed Plaintiff with chronic low back pain and

7  opined that she was "permanently [sic] stationery [sic]" with her back pain.  AR 198.  She was

8  to continue with Vicodin.  AR 198.

9       On July 26, 2004, Plaintiff saw Dr. Perez for back pain and asthma.  AR 196.  Dr. Perez

10  reported that extensive work-up of Plaintiff's back was unremarkable.  AR 196.  On

11  examination, Plaintiff's lungs showed decreased breath sounds bilaterally with faint expiratory

12  rhonchi.  AR 196.  Range of motion of her back was "approximately to 120 degrees."  AR 196.

13  Dr. Perez assessed that Plaintiff's asthma was stable and her chronic low back pain was

14  permanent and stationary.  AR 196.  For her asthma, she was to continue with Advair and any

15  needed combivent inhaler and nebulizer treatments.  AR 196.  For her back pain, she was to

16  continue Vicodin and follow up with Dr. Wlasichuk.  AR 196.

17       On August 10, 2004, Plaintiff again sought treatment for her lower back.  AR 190.

18       On August 17, 2004, Plaintiff underwent an MRI of her lumbar spine.  AR 189.  The MRI

19  demonstrated that Plaintiff had slight narrowing of the neural foramina, worse on the right than

20  the left at the L4-5 level.  AR 189.  Radiologist Cicely Roberts, M.D., opined that there had been

21  essentially no change since Plaintiff's previous MRI.  AR 189.

22       On October 12, 2004, Plaintiff sought treatment for complaints of pain in her lower back

23  going down her right leg to the bottom of her foot.  AR 221.  She was assessed with chronic

24  mechanical lower back pain.  AR 221.  She received a trigger point injection.  AR 131.

25       On October 26, 2004, Plaintiff saw Alex Torres at the Visalia Medical Clinic for chronic

26  back pain and asthma.  AR 217-219.  Plaintiff described her back pain as "burning, chronic."  AR

27  217.  On physical examination, Plaintiff's breath sounds were clear bilaterally and she had

28  diffuse rhonchi and inspiratory wheezes.  AR 218.  She was diagnosed with asthma, lumbago and

1   depressive disorder-NEC.  AR 219.  She was prescribed medications for her back pain and

2   asthma.  AR 219.  Alex Torres discussed smoking and alcohol cessation with her.  AR 219.

3       On December 21, 2004, Plaintiff again sought treatment for pain in her lower back.  AR

4   220.  On that same date, Dr. Wlasichuk completed a Residual Functional Capacity Questionnaire.

5   AR 212-216.  Dr. Wlasichuk indicated that Plaintiff first visited him on May 13, 2003, and had

6   visited him every two months for an approximate total of 16 visits.  AR 212.  Dr. Wlasichuk

7   diagnosed Plaintiff with chronic mechanical low back pain with a fair prognosis.  AR 212.  Dr.

8   Wlasichuk opined that Plaintiff's impairments lasted or could be expected to last at least twelve

9   months.  AR 213.  Dr. Wlasichuk further opined that Plaintiff's symptoms were severe enough to

10  interfere occasionally with attention and concentration needed to perform simple work tasks.  AR

11  213.  She could maintain attention and concentration for one hour at one time.  AR 213.  She was

12  capable of low stress jobs.  AR 214.  She could walk 4 city blocks without rest or severe pain.

13  AR 214.  She could sit for 30 minutes at one time before needing to get up, etc.  AR 214.  She

14  could stand for 30 minutes at one time before needing to sit down, walk around, etc.  AR 214.

15  She could sit about 2 hours and stand/walk about 2 hours in an 8-hour working day.  AR 214.

16  She would need to walk around every 60 minutes for 15 minutes each time.  AR 214.  She would

17  need a job that permits shifting positions at will.  AR 215.  During an 8-hour workday, she would

18  need to take unscheduled breaks every hour for 10 minutes.  AR 215.

19      In a competitive work situation, Dr. Wlasichuk opined that Plaintiff occasionally could

20  carry 10 pounds.  AR 215.  She frequently could look down, turn her head right or left, look up

21  and hold her head in a static position.  AR 215.  She occasionally could twist, stoop (bend),

22  crouch, climb ladders or climb stairs.  AR 215.  She did not have significant limitations in

23  repetitive reaching, handling or fingering.  AR 216.  Her impairments were likely to produce

24  "good days" and "bad days."  AR 216.  She was likely to be absent from work as a result of her

25  impairments or her treatment about three days per month.  AR 216.

26      ALJ's Findings

27      The ALJ determined that Plaintiff met the requirements for Disability Insurance Benefits

28  and was insured for benefits through the date of the decision.  AR 21.  The ALJ found that

1   Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  AR

2   21.  The ALJ also found that Plaintiff's low back pain secondary to lumbago was considered a

3   "severe" impairment, but it did not meet or medically equal one of the listed impairments in

4   Appendix 1, Subpart P, Regulation No. 4.  AR 22.  The ALJ further found that Plaintiff's

5   allegations regarding her limitations were not totally credible.  AR 21, 22.  She retained the

6   residual functional capacity ("RFC") to lift and/or carry up to ten pounds frequently or twenty

7   pounds occasionally and sit, stand, and/or walk about six hours each in an eight-hour day.  AR

8   22.  She was precluded from concentrated exposure to fumes, odors, dust, gases or poor

9   ventilation.  AR 22.  The ALJ concluded that Plaintiff was unable to perform her past relevant

10  work.  AR 22.  Although the ALJ decided that she could not perform the full range of light work,

11  the ALJ used Medical-Vocational Rule 202.18 as a framework and determined that Plaintiff was

12  not disabled.  AR 22.

13  **SCOPE OF REVIEW**

14  Congress has provided a limited scope of judicial review of the Commissioner's decision

15  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

16  the Court must determine whether the decision of the Commissioner is supported by substantial

17  evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla,

18  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v.*

19  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

20  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401

21  (internal quotation marks and citation omitted).  The record as a whole must be considered,

22  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

23  conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and

24  making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v.*

25  *Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

26  determination that the claimant is not disabled if the Commissioner applied the correct legal

27  standards and if the Commissioner's findings are supported by substantial evidence. *See Sanchez*

28  *v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. § § 404.1520(a)-(g), 416.920 (a)-(g) (2005).  Applying the evaluation process in this case, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (mechanical low back pain secondary to lumbago) based on the requirements in the Regulations (20 C.F.R. § 416.920(c) (2005)); (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404;  (4) is unable to perform her past relevant work; but (5) has the RFC to perform a significant range of light work in the national economy.  AR 21-22.

Here, Plaintiff argues that (1) the ALJ incorrectly rejected the opinions of treating physicians, Drs. Wlasichuk and Perez; (2) the ALJ improperly found the claimant not credible; and (3) the ALJ incorrectly failed to adopt the VE's testimony based on the limitations imposed by Dr. Wlasichuk and her testimony.

**DISCUSSION**

A.    Opinions of Treating Physicians

Plaintiff alleges that the ALJ erred by rejecting the opinion of her treating physicians, Drs. Wlasichuk and Perez.  To support her argument, Plaintiff asserts that the opinion of a

treating physician is entitled to greater weight than non-examining sources.  Plaintiff's assertion

is correct.  Cases in this circuit distinguish among the opinions of three types of physicians: (1)

those who treat the claimant (treating physicians); (2) those who examine but do not treat the

claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-

examining physicians).  The opinions of treating physicians should be given more weight than

the opinions of physicians who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725

(9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating physician's

opinion is not contradicted by another physician, it may be rejected only for "clear and

convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.

Even if the treating physician's opinion is contradicted by another physician, the ALJ may not

reject this opinion without providing "specific and legitimate reasons" supported by substantial

evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This

can be done by setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881

F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set

forth his own interpretations and explain why they, rather than the physicians', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

_____  The opinion of an examining physician is, in turn, entitled to greater weight than the

opinion of a non-examining physician.  *Pitzer v. Sullivan,* 908 F.2d 502, 506 n.4 (9th Cir.1990);

*Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating

physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of an examining physician.  *Pitzer,* 908 F.2d at 506.  And like the opinion of a treating

physician, the opinion of an examining physician, even if contradicted by another physician, can

be rejected only for specific and legitimate reasons that are supported by substantial evidence in

the record.  *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995).

_____The opinion of a non-examining physician cannot by itself constitute substantial evidence

that justifies the rejection of the opinion of either an examining physician *or* a treating physician.

*Pitzer,* 908 F.2d at 506 n. 4; *Gallant,* 753 F.2d at 1456.  In *Gallant,* the Ninth Circuit held that

1   "the report of [a] non-treating, non-examining physician, combined with the ALJ's own

2   observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence"

3   and, therefore, did not support the Commissioner's decision to reject the examining physician's

4   opinion that the claimant was disabled. 753 F.2d at 1456. Similarly, in *Pitzer,* the Ninth Circuit

5   concluded that the non-examining doctor's opinion "with nothing more" did not constitute

6   substantial evidence. 908 F.2d at 506 n. 4.

7           1.     Dr. Wlasichuk's Opinion

8           Here, both Drs. Wlasichuk and Perez offered diagnoses of Plaintiff's medical condition

9   and assessments of her ability to work. The record contains multiple reports and forms

10  completed by these physicians between 2003 and 2004. To that end, Dr. Wlasichuk completed

11  an assessment in December 2004 describing Plaintiff's diagnosis and physical abilities. AR 212-

12  216. However, the ALJ rejected Dr. Wlasichuk's opinion because he found it "not supported by

13  any objective findings." AR 19. Instead, the ALJ chose to rely on the opinions of non-

14  examining State Agency medical consultants and his own assessment of Plaintiff's limitations.

15  The opinions of the non-treating, non-examining physicians, along with the ALJ's unsupported

16  determination, do not constitute substantial evidence. *See*, *e.g.*, *Gallant*, 753 F.2d at 1456. The

17  ALJ erred by rejecting Dr. Wlasichuk's opinion of what Plaintiff could still do despite her

18  impairments and physical restrictions.

19          To the extent that Dr. Wlasichuk's opinion may be contradicted by the State Agency

20  physicians, the ALJ may not reject Dr. Wlasichuk's opinion without providing "specific and

21  legitimate reasons" supported by substantial evidence in the record. If there is "substantial

22  evidence" in the record contradicting the opinion of the treating physician, the opinion of the

23  treating physician is no longer entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). In

24  that event, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in

25  Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating

26  physician. Those factors include the "[l]ength of the treatment relationship and the frequency of

27  examination" by the treating physician; and the "[n]ature and extent of the treatment

28  relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i)-(ii).

1  Even when contradicted by an opinion of an examining physician that constitutes substantial

2  evidence, the treating physician's opinion is "still entitled to deference."  SSR 96-2p; *Orn v.*

3  *Astrue,* ___ F.3d ___ (9th Cir. 2007) (2007 WL 2034287).  "In many cases, a treating source's

4  medical opinion will be entitled to the greatest weight and should be adopted, even if it does not

5  meet the test for controlling weight."  SSR 96-2p; *Orn* at *6.  Remand is appropriate to allow the

6  ALJ to afford the proper weight to Dr. Wlasichuk's opinion.

7           2.      Dr. Perez's Opinion

8           Plaintiff contends that the ALJ failed to discuss or to adopt Dr. Perez's March 2004

9  assessment of Plaintiff.  With regard to the ALJ's treatment of Dr. Perez's assessments, the ALJ

10  did cite Dr. Perez's February 2004 evaluation of Plaintiff's mental status, which indicated that

11  Plaintiff was able to perform all work-related mental skills, but was unable to perform any

12  activity that involved prolonged standing, sitting or bending.  AR 18.  Despite referencing this

13  assessment, however, the ALJ neither discussed nor referenced Dr. Perez's subsequent opinion in

14  March 2004 that Plaintiff was unable to work due to her depression and her chronic pain.  AR

15  204.  Although opinions as to whether an individual is unable to work are reserved to the

16  Commissioner, such opinions from medical sources on the issue must not be disregarded.  SSR

17  96-5p.  The ALJ "is required to evaluate all evidence in the case record that may have a bearing

18  on the determination or decision of disability, including opinions from medical sources about

19  issues reserved to the Commissioner."  SSR 96-5p.  In evaluating the opinions of medical

20  sources on issues reserved to the Commissioner, the ALJ must apply the applicable factors in 20

21  C.F.R. §§404. 1527(d) and 416.927(d).  *Id.*  As stated above, the ALJ failed to discuss and to

22  consider the opinion of Dr. Perez regarding Plaintiff's inability to work due to her depression and

23  chronic pain.  Therefore, remand is appropriate to allow the ALJ to consider the opinion of Dr.

24  Perez in light of SSR 96-5p and to apply the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d).

25  B.      Credibility Determination

26          Plaintiff argues that the ALJ improperly found her not totally credible.  An ALJ is

27  required to make specific findings assessing the credibility of a claimant's subjective complaints.

28  *Cequerra v. Sec'y of Health and Human Serv.*, 933 F.2d 735 (9th Cir. 1991).  In rejecting the

complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id.* at 602 (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The findings must justify convincingly the ALJ's rejection of the claimant's excess pain testimony. *Id*

An ALJ is not required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id.* at 603. However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan v. Commissioner of Social Sec. Admin.*,169 F.3d 595, 599 (quoting *Lester*, 81 F.3d at 834.)

To support her argument, Plaintiff contends that she is credible pursuant to Social Security Ruling ("SSR") 96-7p. In evaluating credibility, Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. *See* SSR 96-7p; *Orn* at *9. "An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules." *Orn* at *9. In addition to the objective medical evidence, SSR 96-7p directs the ALJ to consider the following factors:

>    1. The individual's daily activities.
>
>    2. The location, duration, frequency, and intensity of the individual's pain or other symptom;
>
>    3.  Factors that precipitate and aggravate the symptoms;
>
>    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
>    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
>
>    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

1    Here, the ALJ gave seven reasons for rejecting Plaintiff's testimony: (1) the lack of

2    objective medical findings; (2) Plaintiff's conservative treatment, her relief with medication and

3    her lack of side effects from the medications; (3) her failure to participate in any significant pain

4    regimen or therapy program; (4) the lack of evidence that she has needed assistance from others

5    in attending to personal needs or in performing essentially all normal activities of daily living; (5)

6    the lack of evidence showing severe weight loss or severe sleep deprivation because of pain; (6)

7    Plaintiff's statements about her daily activities show that she remains capable of activities

8    consistent with light work; and (7) the lack of a physician statement that she has excess pain and

9    limitation.  AR 21.

10    1.    Lack of objective medical findings

11    Although the ALJ determined that Plaintiff had a severe impairment, he discounted

12    Plaintiff's subjective pain testimony due to a lack of objective medical findings.  AR 21.  As

13    discussed, a claimant may suffer disabling pain even where the degree of pain is unsupported by

14    objective medical findings. *Fair*, 885 F.2d at 601. Although an ALJ cannot disbelieve a

15    Plaintiff's allegations based solely on the medical record, it is certainly a valid consideration.

16    *Rollins v. Massanari*, 261 F.3d 853, 856-857 (9th Cir. 2001).

17    2.    Conservative Treatment, Medication Relief and Lack of Side Effects

18    The ALJ discounted Plaintiff's testimony because "she has required only conservative

19    treatment, and has achieved some relief with medication."  AR 21.  As Plaintiff points out, she

20    not only has taken medication, but also has received epidurals and trigger point injections.  The

21    record is devoid of evidence indicating this was "conservative treatment."  Further, Plaintiff

22    continued to complain of pain even with injections and the use of pain medications.  AR 198,

23    199, 217, 221.

24    Additionally, the ALJ rejected Plaintiff's testimony because "there is no evidence of side

25    effects from the medications she has been taking."  AR 21.  Contrary to this statement, Plaintiff

26    testified regarding side effects from her medications, such as an upset stomach, lightheadedness

27    and shakiness.  AR 234, 245.

28

1

3.      Pain Regimen or Therapy Program

2   As a further reason for discounting Plaintiff's testimony, the ALJ cited Plaintiff's failure

3   to participate "in any significant pain regimen or therapy program."  AR 21.  The record appears

4   to contradict the ALJ's determination and demonstrates that Plaintiff regularly received trigger

5   point injections and underwent a series of epidurals, along with taking pain medication and

6   participating in massage and therapeutic exercise.  AR 131-136, 150, 194, 211.

7

4.      Assistance From Others

8   The ALJ also discredited Plaintiff's testimony because there is "no evidence that she has

9   needed assistance from others in attending to personal needs or in performing essentially all

10  normal activities of daily living."  AR 21.  Plaintiff concedes that she may not receive assistance

11  from others.  Appellant's Opening Brief at p. 15.  However, Plaintiff herself testified that she

12  receives assistance at home from her three boys with cleaning and "stuff" that she cannot do.  AR

13  235.

14

5.      Severe Weight Loss or Severe Sleep Deprivation

15  In part, the ALJ found that Plaintiff lacked credibility because there is "no evidence of

16  severe weight loss because of loss of appetite from pain, and no evidence of severe sleep

17  deprivation because of pain."  AR 21.  While it is appropriate for the ALJ to consider additional

18  limitations that a claimant may have as a result of pain, weight loss and sleep deprivation are not

19  the only factors to be considered.  Moreover, the record reflects that, in October 2004, Alex

20  Torres, Plaintiff's provider at Visalia Medical Clinic, indicated that Plaintiff had weight loss and

21  fatigue.  AR 218.

22

6.      Activities of Daily Living

23  The ALJ discredited Plaintiff's testimony because she has admitted that "she remains

24  capable of activities consistent with essentially light work," such as household chores and driving

25  a car.  AR 21.  If a claimant is able to spend a substantial part of her day engaged in pursuits

26  involving the performance of physical functions that are transferable to a work setting, a specific

27  finding as to this fact may be sufficient to discredit a claimant's allegations.  *Morgan*, 169 F.3d at

28  600.  The ALJ must make "specific findings relating to [the daily] activities" and their

1  transferability to conclude that a claimant's daily activities warrant an adverse credibility

2  determination.  *Orn* at *13 (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  Here,

3  although the ALJ cited two of Plaintiff's daily activities (driving and light household chores) and

4  concluded they were consistent with light work, the ALJ did not make specific findings regarding

5  the transferability of these activities to a work setting.

6          7.      Physician Statement

7          As a final reason, the ALJ discounted Plaintiff's pain allegations because there was "no

8  statement by a physician that the claimant has experienced severe and unremitting pain."  AR 21.

9  The record, however, contains multiple reports from Drs. Perez and Wlasichuk regarding

10 Plaintiff's "chronic" or "constant" pain.  AR 140, 194, 205, 207, 212.

11         Based on the above, the ALJ's credibility analysis is not supported by substantial

12 evidence.

13 C.      VE Testimony

14         Next, Plaintiff argues that the ALJ erred in failing to adopt the testimony of the VE.

15 According to Plaintiff, the ALJ should have adopted the hypothetical posed to the VE that

16 included the limitations of Dr. Wlasichuk and her testimony.  The VE testified that someone with

17 these limitations could not perform work.  "Hypothetical questions posed to the vocational expert

18 must set out *all* the limitations and restrictions of the particular claimant . . . ."  *Embrey*, 849 at

19 422.  The testimony of a VE "is valuable only to the extent that it is supported by medical

20 evidence."  *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  Therefore, the VE's opinion

21 about a claimant's residual functional capacity has no evidentiary value if the assumptions in the

22 hypothetical are not supported by the record.  *Embrey*, 849 F.2d at 422.  Here, the ALJ adopted

23 the hypothetical question that set out the limitations for which he found support in the record.

24 For the reasons discussed above, the ALJ improperly discredited the limitations of Plaintiff's

25 treating physicians and Plaintiff's testimony.  Accordingly, once the ALJ makes a determination

26 of the weight to afford the limitations expressed by Drs. Wlasichuk and Perez, along with

27 Plaintiff's credibility, it may be appropriate to adopt a different  hypothetical than that adopted by

28 the ALJ here.

1

**CONCLUSION**

2        Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3  substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

4  further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

5  judgment in favor of Plaintiff Rosa Y. Alvarez and against Defendant Michael J. Astrue,

6  Commissioner of Social Security.

7

8  IT IS SO ORDERED.

9  **Dated:     August 29, 2007                            /s/ John M. Dixon**
                                                     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28